UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON JAMES MCNABB,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-01055-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 16). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff presents the following issues: "Whether the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints."
(ECF No. 16, p. 3).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows:

## I. ANALYSIS

Plaintiff argues that the ALJ failed to give legitimate reasons to reject his subjective complaints, and failed to include all work-related limitations in the RFC. (ECF No. 16, p. 13). Specifically, Plaintiff argues that the ALJ impermissibly relied only on objective medical evidence to discount Plaintiff's complaints, failed to identity the testimony that was unsupported and the reasons to reject such testimony, likewise failed to articulate reasons to discount third-party statements about Plaintiff's limitations, and these failures led the ALJ to omit limitations from the RFC. Defendant argues that the ALJ considered more than objective evidence in discounting Plaintiff's subjective complaints, the ALJ is not required under the revised regulations to articulate the reasons to discount lay testimony, and the RFC is supported by substantial evidence.

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing

standard."). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

As the ALJ's RFC assessment is ultimately at issue here, the Court notes that a claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

Here, the ALJ formulated the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can never climb ladders, ropes, or scaffolds, can never be exposed to unprotected heights or moving machinery parts, can occasionally be exposed to vibrations, and requires a moderate noise work environment, as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations. The claimant can understand and remember simple instructions, make simple work-related decisions, carry-out simple instructions, cannot perform work which requires a specific production rate, such as assembly line work or hourly quota work, can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors and/or coworkers, but never with the public.

(A.R. 23).

Beginning with Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 24). Accordingly, because there is no affirmative evidence showing that

Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ provided a lengthy recitation of Plaintiff's subjective complaints, among other things, noting the following:

> In his written submissions, the claimant alleged his impairments limited his ability to lift, walk, climb, squat, sit, bend, kneel, use his hands, stand, reach, sleep, concentrate, understand, remember, follow instructions, complete tasks, get along with others, handle stress, and adapt to changes in routine. (B8E at 2, 6, 7). He reported these limitations affected his ability to perform personal care, prepare meals, do house and yard work, get around, enjoy his hobbies, and socialize. (B8E at 2-6). At the hearing, the claimant testified his impairments limited his ability to interact with others, adding that social interaction made him nauseous. He reported he required reminders to perform household chores, was very distractible, and frequently failed to finish what he started. The claimant indicated he left his house less than once per day. He endorsed nearly constant depression that, at its worst, rendered him bedridden, eliminated his appetite, and generated suicidal ideation. The claimant endorsed panic attacks, with physical manifestations including sweating, rapid heartbeats, and, occasionally, hyperventilation. He indicated he experienced extreme attacks at least once per month, and less extreme attacks anytime he left his home. The claimant testified his headaches were triggered by stress, and further limited his ability to focus. He indicated his ability to deal with scheduled activities, and others' expectations was severely reduced. The claimant reported his short term memory was very poor, he was unable to reliably follow verbal instructions, adding that his long-term memory was also significantly reduced. He indicated he relied on his girlfriend to help him handle stress and to remember appointments.

(A.R. 24).

Following this recitation, the ALJ concluded that Plaintiff's "impairments have generated functional limitations, but not to the extent alleged." (A.R. 24). The ALJ noted that, while the impairments caused an involuntary hospitalization before the relevant period, there were not "any similar exacerbations" for the current period. (A.R. 24). While the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Moreover, the Court notes that, while the ALJ ultimately declined to fully credit Plaintiff's

subjective complaints, the ALJ considered them in formulating the RFC.

This is most apparent from the ALJ cross-reference to an earlier discussion in the opinion "relating to [Plaintiff's] mental impairments." (A.R. 24). In that section, the ALJ provided an overview of Plaintiff's complaints and relevant evidence that indicated they could not be fully credited:

> In understanding, remembering or applying information, the claimant has a mild limitation. In his written submissions, the claimant alleged his impairments limited his ability to sleep, understand, remember, and follow instructions. (B8E at 2-6). He reported these limitations affected his ability to perform personal care, prepare meals, do house and yard work, get around, enjoy his hobbies, and socialize. (B8E at 2-6). At the hearing, the claimant testified he required reminders to perform household chores. He reported his short term memory was very poor, he was unable to reliably follow verbal instructions, adding that his long-term memory was also significantly reduced. He indicated he relied on his girlfriend to help him handle stress and to remember appointments.
>
> The record does not establish that the claimant's mental impairments have significantly limited his functioning in this area. The claimant has only rarely exhibited signs consistent with limitation in this area, such as rigid thought processes. (B8F at 29). Treatment providers have consistently observed him to be alert and to exhibit signs consistent with unremarkable cognitive function, including coherent, relevant, and logical thought processes, and unremarkable perception. (B2F at 53, 54; B3F at 4; B6F at 3, 4; B8F at 13, 25, 29; B10F at 4, 8, 13, 20, 24, 25, 30, 31, 38, 38, 45, 57). Cassandra Fees, Ph.D., a mental consultative examiner, who examined the claimant on July 9, 2021, observed that he exhibited unremarkable sensorium, orientation, calculations, fund of knowledge, memory, abstractions, thought process, and thought content, and concluded he was capable of managing funds independently. (B14F at 4, 5, 12). Based on the above-described evidence, and the record as a whole, I conclude that the claimant's mental impairments have generated mild limitation, at most, in this area, during the relevant period.
>
> In interacting with others, the claimant has a moderate limitation. In his written submissions, the claimant alleged his impairments limited his ability to get along with others. (B8E at 6). He reported these limitations affected his ability to socialize. (B8E at 5, 6). At the hearing, the claimant reiterated that his impairments limited his ability to interact with others, and that social interaction made him nauseous. He testified he left his house less than once per day. The claimant endorsed nearly constant depression that, at its worst, rendered him bedridden, eliminated his appetite, and generated suicidal ideation. He reported panic attacks, with physical manifestations including sweating, rapid heartbeats, and, occasionally, hyperventilation. He indicated he experienced extreme panic attacks at least once per month, and less extreme attacks anytime he left his home.

The record establishes that the claimant's mental impairments have generated some limitation in this area, but not to the extent alleged. The claimant has consistently endorsed socially limiting symptoms to treatment providers, including depression, anxiety, low self-esteem, panic, and apathy. (B3F at 2; B8F at 26, 28; B10F at 18, 28, 35, 54). He endorsed similar symptoms to Dr. Fees, as well as non-command hallucinations. (B14F at 2, 3). However, as he acknowledges, and as the record shows, the claimant is able to maintain a relationship. (B2F at 9). Treatment providers have occasionally observed signs consistent with some of these symptoms, including morose or sad moods, rapid and/or soft speech, hopeless and/or helpless thought content, and slowed motor activity. (B3F at 4; B8F at 25, 26, 29; B10F at 8, 25). However, they also report that the claimant is cooperative, makes appropriate eye contact, and generally exhibits relaxed and engaged behavior, good grooming, appropriate attire, calm motor activity, and normal speech. (B2F at 53, 54; B3F at 4; B6F at 3, 4; B8F at 13, 25, 29; B10F at 4, 7, 8, 13, 20, 24, 25, 30, 31, 37, 38, 45, 57). On numerous occasions, treatment providers have observed entirely unremarkable mental functioning. (B6F at 3, 4; B8F at 13; B10F at 30, 31, 37, 38, 45, 57). Dr. Fees observed that, although the claimant endorsed occasional passive suicidal ideation, and had a flat affect, he also exhibited an ok mood and a cooperative attitude, easily engaged on task, and easily established rapport. (B14F at 4, 5). Richard Wagner, M.D., a medical consultative examiner, who examined the claimant on March 13, 2020, observed that he was very pleasant and cooperative, and was able to provide an adequate history. (B5F at 2). Based on the above-described evidence, and the record as a whole, I conclude that the claimant's mental impairments generate no more than moderate limitation in this area.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In his written submissions, the claimant alleged his impairments limited his ability to sleep, concentrate, and complete tasks. (B8E at 2, 6). He reported these limitations affected his ability to perform personal care, prepare meals, do house and yard work, get around, enjoy his hobbies, and socialize. (B8E at 2-6). At the hearing, the claimant testified he required reminders to perform household chores, was very distractible, and frequently failed to finish what he started. The claimant indicated he left his house less than once per day. He endorsed nearly constant depression that, at its worst, rendered him bedridden, eliminated his appetite, and generated suicidal ideation. The claimant also endorsed panic attacks, with physical manifestations including sweating, rapid heartbeats, and, occasionally, hyperventilation. He indicated he experienced extreme attacks at least once per month, and less extreme attacks anytime he left his home. The claimant testified his headaches were triggered by stress, and further limited his ability to focus. He indicated his ability to cope with scheduled activities was severely reduced.

The record establishes that the claimant's mental impairments have generated limitation in this area, but not to the extent alleged. The claimant has endorsed severely distracting symptoms to treatment providers, including those noted in the earlier area discussions. Treatment providers have observed signs consistent with

> distracting symptoms, including those noted and cited in the earlier area discussions. However, treatment providers have rarely, if ever observed actual concentration deficits, and Dr. Fees noted that the claimant exhibited unremarkable attention and concentration. (B2F at 53, 54; B3F at 4; B6F at 3, 4; B8F at 13, 25, 29; B10F at 4, 7, 8, 13, 20, 24, 25, 30, 31, 37, 38, 45, 57; B14F at 4). Accordingly, while the record suggests that the claimant's attention and concentration would likely be limited were he to attempt the performance of competitive work, it does not establish that his symptoms would generate marked or extreme limitation in this area. Therefore, I conclude his mental impairments have generated up to moderate limitation here during the relevant period.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. In his written submissions, the claimant alleged his impairments limited his ability to handle stress and adapt to changes in routine. (B8E at 7). He reported these limitations affected his ability to perform personal care, prepare meals, do house and yard work, get around, enjoy his hobbies, and socialize. (B8E at 2-6). At the hearing, the claimant testified he left his house less than once per day. He endorsed nearly constant depression that, at its worst, rendered him bedridden, eliminated his appetite, and generated suicidal ideation. The claimant endorsed panic attacks, with physical manifestations including sweating, rapid heartbeats, and, occasionally, hyperventilation. He indicated he experienced extreme attacks at least once per month, and less extreme attacks anytime he left his home. The claimant indicated his ability to cope with scheduled activities, and others' expectations was severely reduced. He reported he relied on his girlfriend to help him handle stress.
>
> The record establishes that the claimant's mental impairments have generated limitation in this area, but not to the extent alleged. Treatment providers have sometimes observed that he exhibits "limited" or "fair-to-poor" insight, and, on rare occasions, "impaired" judgment, but never "absent," "poor," or otherwise debilitated insight or judgment. (B3F at 4; B8F at 26; B10F at 4, 8, 13, 20). Moreover, on other occasions they have observed him to exhibit entirely unremarkable insight and judgment. (B6F at 3, 4; B8F at 13, 29; B10F at 25, 30, 31, 37, 38, 45, 57). The portion of the treatment record that reflects impairment in these areas does not last one year, and Dr. Fees observed that the claimant exhibited good insight, and intact judgment in July 2021. (B14F at 5). The record also does not reflect conduct consistent with a dangerous absence of insight or judgment during the relevant period. While it reflects an instance wherein the claimant was subject to an involuntary hold for suicidal ideation and/or an attempt, this occurred on or prior to May 13, 2018, more than one and a half years prior to the protective filing date. The above-discussed evidence, and the record as a whole establishes that the claimant's mental impairments have generated up to moderate limitation in this area during the relevant period.

(A.R. 20-22).

Contrary to Plaintiff's assertion, the ALJ sufficiently indicated which testimony was

discounted and explained why. Generally, the ALJ concluded that there was some support for Plaintiff's complaints, but not to the degree alleged, mostly based on the lack of supporting evidence and multiple normal examination findings.

In short, it was reasonable for the ALJ to reject Plaintiff's complaints as unsupported by and inconsistent with the record evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined Morgan's credibility."). Accordingly, the Court concludes that the ALJ provided legally sufficient reasons for not giving full weight to Plaintiff's subjective complaints.

Plaintiff also argues that the ALJ erred by failing to articulate any rationale for rejecting lay witness statements submitted on his behalf. (ECF No. 16, p. 16). On this issue, the ALJ concluded as follows:

> The record includes letters and one Third Party Function Report from several of the claimant's family members and friends. (B3E, B29E-B32E, B34E). These are generally consistent with the claimant's allegations, and with each other. However, they are not well-supported or particularly consistent with the below-discussed evidence, and the record as a whole.

(A.R. 24).

The parties dispute the applicable standard, with Plaintiff arguing that the ALJ is required to articulate germane reasons to discount lay witness statements, and Defendant arguing that, under relevant new regulations, the no articulation is required. (ECF No. 16, p. 16; ECF No. 17, p. 14).

The Court notes that there is caselaw indicating that an ALJ need not articulate the reasons to discount lay witness statements under the revised regulations. *See Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."); *Neri v. Comm'r of Soc. Sec.*, No. 1:21-CV-01235-SAB, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) (opining

that, under the revised regulations, an ALJ must consider, but not necessarily articulate how the ALJ considered lay testimony, and concluding that, in any event, the result would be the same if the germane-reasons standard applied).

Ultimately, the Court need not resolve this dispute. Importantly, courts have declined to reverse on this issue where an ALJ provided clear and convincing reasons to reject a Plaintiff's complaints, where such complaints were similar to the lay testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Here, the lay witness statements were similar to Plaintiff's own complaints about his symptoms and limitations. (*See, e.g.*, A.R. 416-17). As discussed above, the ALJ provided sufficient reasons to reject Plaintiff's complaints. Accordingly, the opinion was likewise sufficient to discount the lay witness statements.

Lastly, finding no error in the ALJ's decision as to Plaintiff's subjective complaints or the lay witness statements, the Court concludes that the RFC did not fail to include material work-related limitations.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **June 16, 2023**          /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE

9